SORENSEN, by guardian *ad litem,* Respondent, vs. J. I. CASE THRESHING MACHINE COMPANY, Appellant.

*September 14—October 9, 1906.*

*Master and servant: Personal injuries: Defective machinery: Contributory negligence: Instructions to jury: Damages.*

1. Plaintiff, an employee in defendant's shop, was injured by the falling of a crane caused by the breaking of an eyebolt by which one of the iron rods supporting the crane was fastened to the framework of the building. Findings by the jury that the construction of the rod and bolt was not reasonably safe and sufficient, and that defendant's negligence in respect to such construction was the proximate cause of the injury, are *held* to be sustained by the evidence.

2. The use of the words "plaintiff's *fault*" in an instruction regarding contributory negligence and assumption of risk is *held* not to have been an error prejudicial to defendant, where, as used, they obviously meant merely a want of ordinary care on the part of plaintiff, of which the court had just spoken.

3. In an action for personal injuries an instruction that plaintiff, if entitled to recover, was entitled to such sum as would *fully compensate* him for all the elements of damage which the court had just specifically mentioned, is *held* not erroneous by reason of the use of the word "fully."

APPEAL from a judgment of the circuit court for Racine county: E. B. BELDEN, Circuit Judge. *Affirmed.*

This is an action to recover damages for personal injuries sustained by the plaintiff June 9, 1905, while in the employ of the defendant in its boiler shop. The machine and its

operation and the manner in which the injury was inflicted are described by defendant's counsel substantially as follows:

There was a swinging crane used for handling large pieces of boiler plates and tires for traction engine wheels; said crane consisting of an upright post about fifteen feet high and swinging thereon near the top a horizontal arm designed to swing in a half circle, twelve or fifteen feet in length, and having on it pulleys and air hoist for the purpose of lifting material. The said upright post was held in position at the top by iron rods fastened to the top of the post and to the iron framework of the building. The punch stands about five feet high, and on the top of this is an iron post or upright of the crane about thirteen feet high. Near the top of it is a horizontal arm or boom sixteen feet in length moving in a semicircle about the upright post. On this arm is an air hoist running on a trolley, and it runs back and forth the entire length of the arm. Thus, when a tire plate is suspended from the air hoist it can be moved freely in any direction by the man on the floor. The top of the crane post is supported by four iron bars running at right angles to each other and fastened to the channel plates of the building. The one that broke was the northwest guy rod and was either seven eighths of an inch or an inch in diameter. It approached the channel plate from the post at an angle of about thirty-five degrees, and was fastened to an eyebolt an inch in diameter and about four or five inches long, which passed through the channel plate and was bolted firmly thereto at right angles with a nut on each side of the channel plate. Thus, while the strain on the guy rod was a direct pull, an angle was formed between the guy rod and the eyebolt causing the strain on the bolt to be a side or breaking strain. The bolt broke next to the channel plate on the side nearest the guy rod. The end of it and the nut which was found after the accident are in evidence, and show that, on the inner side of the break, the iron was crystallized for about twenty-five per

cent. of the cross-section of the bolt. The only claim of negligence relied upon was in the faulty construction of the guy rod, in that a breaking strain came upon the bolt instead of a direct pull. At the time of the accident a load of about 1,000 pounds, including the air hoist and all that it carried, was resting at about the center of the arm. Much heavier loads had frequently been lifted by the same crane. The arm was pointing in a southeasterly direction, consequently bringing the strain almost entirely upon the northwest guy rod. The operator of the punch and the plaintiff, his assistant, were at work, and had just finished punching holes in one end of the tire; the plaintiff being at the south end of the tire assisting the operator to swing the tire around so as to punch the other end, when the crane toppled over, part of it striking the plaintiff upon the head, and the tire of which he had hold falling upon and crushing his hand.

Issue being joined and trial had, the jury at the close thereof returned a special verdict to the effect (1) that the construction of the rod and eyebolt in question was not reasonably safe and sufficient for the purpose of sustaining the crane in view of the character of the work required; (2) that the defendant was negligent in respect to such construction; (3) that such negligence was the proximate cause of the plaintiff's injury; (4) that the plaintiff was not guilty of any want of ordinary care which contributed to produce his injury; (5) that they assessed the plaintiff's damages at $1,500. From the judgment entered thereon in favor of the plaintiff and against the defendant for the amount stated, the defendant appeals.

For the appellant there was a brief by *Vilas, Vilas & Freeman,* and oral argument by *E. P. Vilas.*

*Wallace Ingalls,* for the respondent.

CASSODAY, C. J.  1. Errors are assigned because the court refused to grant a nonsuit, and refused to direct a verdict in

favor of the defendant, and refused to change the answer of
the jury to the first question submitted from the negative to
the affirmative, and the answers of the jury to the second and
third questions from the affirmative to the negative.   These
alleged errors are all discussed under the general proposition
that the evidence on the part of the plaintiff fails to establish
any actionable negligence in the construction of the machine.
A description of the machine and its operation and the man-
ner in which the injury was inflicted are sufficiently set forth
in the foregoing statement.   In addition to the facts thus
conceded there is evidence on the part of the plaintiff tend-
ing to prove that were several punch machines in the boiler
shop; that there was a certain amount of jar or vibration
caused by the operation of the machine as it was ordinarily
used; that the motion of the machines jars the rods and vi-
brates the crane, and that the vibration of the crane and the
standard vibrates the supporting rods; that a five horse-power
motor was applied to punch these iron pieces, but it is geared
up to such an extent that it develops a good deal more than
five horse-power; that every time a hole is punched through
the sheet of iron the whole machine is jarred, including the
rod and crane; that there are from 150 to 200 holes in a tire
sixteen feet long and twenty inches wide; that carrying a
load on that crane of 1,000 pounds with the carrier about
midway on the arm, pointing in a southeasterly direction,
the strain, with reference to the two rear rods, would be
mostly on the northwest rod, which was perfectly straight, ex-
cept where the eyebolt went through the iron beam, and there
there was an angle where the two pieces were tied together;
that the eyebolt and the long piece formed the angle at the
place where the one engaged with the other; that the ma-
chine in operation jarred or vibrated the rods, standpost and
punch; that the action of the punch caused the jar; that
there was heavy pounding and punching going on all the
time and more or less jarring throughout the entire shop;

that there was nothing unusual in the load being lifted at the time of the accident; that the tensile strength of iron was a pull—the tendency to lengthen; that a side or breaking strain of iron was a transverse stress or bending strain; that the cause of the breaking of the eyebolt was the fact that it was too weak to carry the load. In answer to the hypothetical question which assumed that the angle mentioned was substantially thirty-five degrees, as stated, by the defendant's counsel, an expert witness with much experience testified to the effect that where the vibration ceased at the angle in question was next to the nut, which caused the rod to crystallize; that as it crystallized it became weaker, and finally, when it became weak enough not to carry the load, it would break; that by crystallizing was meant that it would lose all the fiber of the iron and become a very different piece of material from the original; that in the absence of such fiber the surface of the iron looked more like a section of zinc; that the broken end in question was crystallized about one third across; that in the ordinary use of the crane the weakest point of the sustaining rod was just on the inner side of the nut, if both sides were screwed up solidly against the bolt on the side towards the crane, because that was the point where the leverage was placed—the leverage stopped there,—and in that four inches there was a strain on the diameter of seven eighths of an inch of about four and a half times the weight that was on the crane, tending to pull the bolt to the side and break it; that the strain on the eyebolt just next to the inner nut was a transverse or breaking strain, tending to break the bolt; that, of course, the bolt was the weakest in that direction; that such construction was not mechanical; that the construction of the rod in question and the manner in which it was tied to the beam were not the customary way but an unusual way; that the principle of the eyebolt was all wrong because it stood at a right angle to the beam; that if the truss rod had gone directly through on a line then there would have

been tensile strength of the whole rod instead of a transverse section to bend; that the usual and customary way of fastening devices of that character, where four tension rods are in use, would be a foot formed on the end of the rod and fastened right to the girder with bolts, so as to get a direct pull, or it could pass right through the girder with angling washers on it and screwed up square to the face of the nut; that the usual and customary way was to avoid a right angle, and that is done by a foot, as mentioned, when tension rods are used; that with the foot there would not be any movement, because it runs directly on a straight line, and it all becomes tensile strength, which is very much more than a transverse stress, which is a bending strain; that it is weaker with an eyebolt in it, and grows weaker every day the rod is shaken and vibrated, because that is what produces crystallization; that crystallization is most frequently caused by sudden shocks, and so it may be caused by a continuous succession of shocks or blows, and so vibration would cause crystallization as shown by experience; that crystallization reduces the tensile strength of iron—not always so much, however, as the ductility and elongation; that assuming the angle mentioned to be about thirty-five degrees, with an eyebolt running at right angles with the beam, and then tied to a longer piece going to the stand, the weakest part of the rod in question would be at the nut.

The evidence on the part of the defendant tended to prove that the device which broke was put in about a year and a half before the accident, and that it was again inspected in the fall of 1904. We are constrained to hold that there was evidence sufficient to sustain the findings of the jury mentioned; and that such evidence was not, as a matter of law, conclusively overcome by uncontradicted evidence on the part of the defendant.

2. Exception is taken because the court, in charging the jury upon the question of contributory negligence and the as-

sumption of risk, after defining a want of ordinary care, stated that such "want of ordinary care was not a contributing cause to produce the injury unless there was a proximate connection between such injury and such want of ordinary care; that is, it must appear from the evidence that there was such a relation between the *plaintiff's fault,* if any, and the injury that such injury was a natural and probable result thereof." The criticism is in the use of the word "fault," which is not to be commended, but, as used, it obviously referred back to "such want of ordinary care," and hence could not have misled the jury.

3. Error is assigned because the court charged the jury to the effect:

"If the plaintiff is entitled to recover at all in this action . . . he is entitled to such sum as will *fully compensate* him for such loss of earnings as you are satisfied by the evidence he has reasonably sustained as a result of the injury; for all bodily pain and suffering and mental suffering which he has endured by reason of the injury complained of; and for such permanent injuries as you are satisfied from a fair preponderance of the evidence it is reasonably certain the plaintiff will suffer in the future by reason of the injury complained of. You will answer this question regardless of your answers to the other questions, and assess such damages as you are satisfied by the evidence considered under the instructions given to you will *fully compensate* the plaintiff for *all the elements of damage* I have suggested to you."

The exception is to the words "will *fully* compensate." But, as indicated in the language quoted, those words were expressly limited to "the elements of damage" which had just been mentioned in the charge of the court. As thus limited, we do not think such charge is inconsistent with the ruling of this court in the case relied upon by counsel. *Guinard v. Knapp-Stout & Co. Co.* 95 Wis. 482, 490, 70 N. W. 671. Nor is it inconsistent with later cases in this court on the subject. *Candrian v. Miller,* 98 Wis. 164, 167, 168, 73

N. W. 1004; *Bergeron v. Peyton,* 106 Wis. 377, 382, 383, 82 N. W. 291. We find no reversible error in the record.

*By the Court.*—The judgment of the circuit court is affirmed.