[Civ. No. 3605.  First Appellate District, Division One.—December 9, 1920.]

## FONG LIN et al., as Special Administrators, etc., Respondents, v. FRANK H. PROBERT, Appellant.

[1] NEGLIGENCE—ACTION FOR DAMAGES FOR DEATH—EVIDENCE—FINDING.—In this action for damages for the death of plaintiff's intestate from injuries received, while waiting for a train, through having been run into and knocked down by an automobile driven by the defendant, the evidence was sufficient to support the finding of negligence on the part of the defendant.

[2] ID.—ABSENCE OF REGULAR WAITING-STATION—RIGHT TO STAND AT USUAL PLACE.—There having been no regular station or safety zone where such train was accustomed to stop, the deceased, while awaiting its arrival, had a right to stand at the usual place for persons intending to board trains to stand.

[3] ID. — PRESENCE OF AUTOMOBILE TRACKS — CAUSE OF BY DEFENDANT'S CAR—EVIDENCE—ADMISSIONS.—Where the defendant himself admitted that he had examined certain scars in the asphalt that appeared on the roadway the next morning after the accident, which markings were caused from the friction of rubber, and that his car had made such scars, the plaintiffs, who had introduced testimony as to such scars for the purpose of showing at what point defendant had applied his brakes, were not required to prove that the tracks were caused by defendant's automobile.

[4] ID.—MARRIAGE OF DECEASED—MODE OF PROOF—WAIVER OF OBJECTIONS.—In such action, the brother of the deceased having been permitted, without objection, to testify that the deceased was married and that he left surviving him a wife and two minor children, all of whom resided in China, and no evidence having been introduced to disprove these facts, the admissibility and sufficiency of such evidence to prove those facts cannot be questioned for the first time on appeal.

[5] ID.—DEPRIVATION OF SUPPORT—LOSS SUFFERED—RESIDENCE OF DEPENDENTS IMMATERIAL.—In such action, the deprivation of the support that deceased was morally and legally bound to furnish his wife and minor children is the loss suffered, and the fact that they are nonresidents does not in any manner affect their rights.

5. Measure of damages for husband's death, notes, 12 **Am. St. Rep.** 375; 3 **Ann. Cas.** 103; 16 Ann. Cas. 932.

[6] ID.—EXPECTANCY OF LIFE—INCOME—DAMAGES NOT EXCESSIVE.—
Considering the facts that the expectancy of life of the deceased,
as shown by mortality tables introduced in evidence, was thirty-
two years and that of his wife and children a longer period, that
he was in sound physical health and was earning forty-five dollars
a month together with his board and lodging, and was to receive
more, it could not be said that the judgment in favor of the plain-
tiffs for five thousand four hundred dollars was excessive as mat-
ter of law; neither does such judgment suggest at first blush
passion or prejudice.

APPEAL from a judgment of the Superior Court of
Alameda County. E. C. Robinson, Judge. Affirmed.

The facts are stated in the opinion of the court.

Chas. S. Peery for Appellant.

Miller, Thornton, Miller & Watt for Respondents.

KERRIGAN, J—Plaintiffs, suing as special administra-
tors of the estate of Fong Ben Yuen, deceased, brought this
action, alleging negligence on the part of defendant in the
operation of an automobile owned by him resulting in in-
juries causing Yuen's death.

The complaint charged that deceased, at the time of the
accident, was married and that he left surviving him a wife
and two minor children, who are his heirs at law and in
whose behalf this action is brought. Damages are hereby
sought under the provisions of section 377 of the Code of
Civil Procedure.

The case was tried before the court without a jury, and
damages were awarded to plaintiffs in the full amount
prayed for, which was the sum of five thousand four hun-
dred dollars. A motion for a new trial was made and
denied.

The findings in the case described generally the manner
in which the accident occurred, and they are in substance
as follows: On the twenty-second day of September, 1917,
at or about the hour of 7:30 P. M., deceased was lawfully

6. Excessive or inadequate damages for personal injuries result-
ing in death, notes, 18 Ann. Cas. 1209; Ann. Cas. 1915C, 445; Ann.
Cas. 1916B, 460; L. R. A. 1916C, 820.

upon Claremont Avenue, a public highway, at a place commonly known as the North Gate station of the San Francisco-Oakland Terminal Railways, in the city of Berkeley, county of Alameda. About this time defendant was driving his automobile in a westerly direction along Claremont Avenue at a high rate of speed, and ran into, knocked down, and crushed and maimed deceased, inflicting injuries from which he died the same evening. Deceased at the time of his death was about the age of thirty-seven years, was in sound physical health, and employed as a cook at a salary of forty-five dollars a month in addition to his board and lodgings. He left surviving him as his heirs at law Quong Shee, his wife, of the age of about thirty-two years, Fong Wing Jake, a minor son of about the age of eleven years, and Fong Kune, a minor daughter of about seven years, all of whom reside in China, and were dependent upon deceased for support.

Appellant presents and argues several grounds upon which he relies for a reversal of the judgment. It is his claim that the evidence fails to show any negligence on his part, and further, that there is no proof that deceased was married or that he ever contributed to the support of the heirs above named. Complaint is also made that the judgment is excessive.

We do not consider that there is any merit in any of the points urged.

[1] Upon the question of negligence the evidence shows that on the evening of the day when the accident happened defendant, accompanied by his son, left his home in his automobile and proceeded along Claremont Avenue, in Berkeley, toward the North Gate station of the railroad mentioned, commonly known as the Key Route. According to the testimony of the defendant and his son they were traveling at the rate of from ten to twelve miles an hour. At the intersection of two certain streets they reached the railroad track, looked for a train going to San Francisco, and none being in sight, they crossed over the track to the northerly side of Claremont Avenue, continuing to drive at the same rate of speed mentioned. At a point about eighty-five feet from the place where the accident happened defendant saw two people step off the sidewalk and into the street, whereupon he tooted his horn, applied the foot-brake and, to avoid

striking them, swerved sharply to the left. As the machine passed these persons defendant noticed deceased standing in the street about fifteen feet ahead of him. Confronted with this situation defendant immediately applied the emergency-brake and attempted to turn his car so as to avoid hitting deceased, but in this effort he was unsuccessful, for the left headlight of the car struck deceased, dragged him some eighteen or twenty feet, and inflicted the injuries which resulted in his death.

It is the claim of appellant that the uncontradicted evidence shows these facts, from which it is argued that a case is thus presented of two persons unexpectedly placing themselves in a position of danger, to avoid injuring one of whom defendant swerved, and in so doing struck the other, for which act it is claimed no negligence can be imputed to him.

Other evidence, however, presents a different situation. Upon the question of the rate of speed the automobile was traveling there is a conflict in the testimony. The only other witness who saw the accident besides defendant and his son testified that the machine was traveling at about twenty miles an hour at the time of the accident. In addition to this direct testimony it is also in evidence that a police officer, immediately after the accident, in company with defendant, drove the car at the rate of from ten to twelve miles an hour for the purpose of ascertaining whether or not the brakes were properly working, and that, traveling at such rate of speed, he had stopped the machine in a space of some nine feet. Expert testimony was also introduced to show within what distance at the place where the accident occurred a machine of the weight and character of defendant's car, and traveling at the speed testified to by the defendant, could be stopped. The witness upon this question placed the distance at about ten feet, and further testified that it would have been impossible for the machine to have traveled as far as the evidence shows it did with the brakes applied as testified to by appellant. In this regard all the evidence shows that after defendant had traveled a distance of eighty-five feet or more, as above recited, with his foot-brake on, he then applied his emergency-brake, and notwithstanding this fact, with both brakes set he traveled an additional thirty-five feet. This evidence would indicate that defendant was traveling at a much greater speed at

the time of the accident than he and his son testified to. Moreover, there was in evidence the character of the injuries that deceased suffered. His face and scalp were extensively lacerated, so much so that his employer could not recognize him shortly after the accident. His skull and leg were fractured. This, too, would tend to show that the machine was driven at great speed. Aside from the question of speed it further appeared that defendant was driving with sidelights only. His front lights were brilliant but had not been dimmed, as required by the city ordinance, and for this reason he was not using them. The degree of illumination and the speed of a car are somewhat interrelated. The evidence showed that the night was dark, the city lights not having been lit, and save from that produced by two lanterns on a gate and the illumination from lights in a store, there was no artificial light except that furnished by the automobile. There was also evidence to show that it would not be safe to drive with sidelights under these circumstances at a greater speed than from ten to twelve miles an hour. These were questions of fact to be considered by the trial court in determining whether or not the defendant was guilty of negligence.

[2] Appellant claims that deceased should not have been standing where he was. There was no regular station or safety zone where the train was accustomed to stop, but the place where deceased was standing awaiting its arrival was the usual place for persons intending to board trains to stand. Deceased had a right, therefore, to be where he was.

[3] Appellant complains of the admission of testimony of the existence of scars in the asphalt that appeared on the roadway the morning after the accident. These markings are caused from the friction of rubber. This testimony was introduced for the purpose of showing at what point defendant had applied his brakes. The witnesses who testified upon this subject had visited the scene at that time, and defendant contends that this evidence was inadmissible, for the reason it was too remote, there being no preliminary proof that the tracks were caused by defendant's automobile, and it being claimed that the street was a much traveled one. This evidence was received upon the condition

that it be connected up. Plaintiff failed to do so, for the reason that defendant himself admitted that he had examined the tracks the same morning and that his car had made the scars testified to. Under these circumstances no connecting evidence was required of plaintiffs.

We deem the review of the evidence we have given sufficient to show that it is ample to support the finding of negligence.

[4] Upon the question of the proof of marriage little need be said. A brother testified that deceased was married, and that he left surviving him the wife and two children hereinbefore mentioned. No objection was made to this mode of proof, nor was any evidence offered to disprove the fact. The evidence having been received without objection, its admissibility cannot be questioned for the first time on appeal. (*Lucy* v. *Davis,* 163 Cal. 611, 616, [126 Pac. 490]; *McComish* v. *Kaufman,* 43 Cal. App. 507, [185 Pac. 476].)

[5] The same applies to the claim that the record fails to show that deceased contributed to the support of his wife and children, or that they were dependent upon him. This question is not one of first impression in this state. The relief given by section 377 of the Code of Civil Procedure is one for the benefit of the "heirs" for any pecuniary loss they may suffer, and lies regardless of the condition of such heirs as to dependency. (*Taylor* v. *Albion Lumber Co.,* 176 Cal. 347, [L. R. A. 1918B, 185, 168 Pac. 348].) Deprivation of the support that deceased was morally and legally bound to furnish his wife and children is the pecuniary loss here suffered, and the fact that they are nonresidents does not in any manner affect their rights. (Idem.)

[6] And finally, we are called upon to declare the judgment excessive. This we cannot do. Mortality tables were introduced in evidence to show that the expectancy of life of the decedent was thirty-two years; his wife and children a longer period. He was earning forty-five dollars a month together with his board and lodging, and was to receive more. The judgment is not excessive as a matter of law. Nor does it suggest at first blush passion or prejudice; and there is nothing in the case to show that the trial judge did not justly meet his duty of fixing the proper amount of

damages to be awarded. (*Parsons* v. *Easton,* 28 Cal. App. Dec. 1151.)

For the reasons given the judgment is affirmed.

Wood, P. J., *pro tem.,* and Richards, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 7, 1921.

All the Justices concurred.