[Civ. No. 2672. Third Appellate District.—April 16, 1924.]

HAZEL SCOTT et al., Appellants, v. GEORGE H. SCIARONI, Respondent.

[1] Nonsuit — When Proper.—A court may grant a nonsuit only when, disregarding conflicting evidence and giving the plaintiff's evidence all the value to which it is legally entitled, herein indulging in every legitimate inference which may be drawn from the evidence, the result is a determination that there is no evi-

1. See 9 Cal. Jur. 547.

dence of sufficient substantiality to support a verdict in favor of plaintiff.

[2] ID. — INSUFFICIENCY OF COMPLAINT. — Insufficiency of the complaint in an action for damages for negligence is not a statutory ground for granting a nonsuit; and a judgment of nonsuit will not be upheld on appeal on the ground of insufficiency of the complaint, where that ground was not stated in the motion for a nonsuit.

[3] ID. — NEGLIGENCE OF PHYSICIAN—ADMISSIONS—EXPERT EVIDENCE. In this action for damages for personal injuries sustained by plaintiff as the result of the alleged negligence of the defendant, a physician and surgeon, in the application of radium in the treatment of plaintiff, the testimony as to defendant's admissions that he "left the radium on too long" and that "it was his fault that she [plaintiff] was in the condition she was," when considered in connection with the proof of the long continued intense pain suffered and the failure of the burned part to heal, constituted sufficient expert evidence to require the submission of the case to the jury.

[4] ID. — OFFER OF COMPROMISE — ADMISSIONS—EVIDENCE.—Such admissions by defendant having been of distinct facts, stated positively and not hypothetically, were admissible in evidence against him, even though they were made in the course of an attempted compromise of plaintiff's claim for damages.

[5] ID.—WEIGHT OF EVIDENCE—CREDIBILITY OF WITNESSES — IRRELEVANT QUESTIONS.—The argument that declarations and admissions are the weakest kind of evidence goes only to the credibility of the witnesses testifying to the admissions and to the weight of the evidence, questions which do not arise on a motion for a nonsuit—the question there being whether the evidence, assuming its absolute verity, is legally sufficient to support a judgment for the plaintiff.

APPEAL from a judgment of the Superior Court of Fresno County. J. E. Woolley, Judge. Reversed.

The facts are stated in the opinion of the court.

---

(1) 38 Cyc., pp. 1553, 1555, 1557. (2) 38 Cyc., p. 1554 (1926 Anno.). (3) 30 Cyc., p. 1588. (4) 22 C. J., p. 315, sec. 349. (5) 4 C. J., p. 651, sec. 2541; p. 902, sec. 2872.

2. See 9 R. C. L. 206.
3. See 10 Cal. Jur. 994, 1057; 11 R. C. L. 574.
4. See 10 Cal. Jur. 1060; 1 R. C. L. 467, 471.
5. See 10 Cal. Jur. 1080.

Ernest Klette, W. M. Conley, Lindsay & Conley and Phillip Conley for Appellants.

M. G. Gallaher, Gallaher, Simpson & Hays, Hartley F. Peart, Gus L. Baraty, Geo. F. McNoble and Hubert T. Morrow, for Respondent.

FINCH, P. J.—At all times mentioned in the complaint the defendant was a physician and surgeon, engaged in practice in the city of Fresno. During June and July, 1920, he prescribed and applied radium treatment for fibrous tissue growths upon the hands, knees and Achilles tendons of plaintiff Hazel Scott. The complaint alleges that the defendant "did so carelessly, negligently and unskillfully give and apply said radium treatment . . . as to cause burns and sores upon the ankles, hands, knees and Achilles tendons of both legs of said plaintiff; . . . that by reason of said negligence . . . the said plaintiff, Hazel Scott, has during all of the times herein mentioned, suffered, and does now suffer, great pain and anguish, and is permanently disfigured and injured, and will continue to suffer great pain and anguish in the future; that by reason of said negligence on the part of the said defendant and said injuries so caused thereby, the said plaintiff, Hazel Scott, was confined to her bed for a period of about six months; that the said injuries . . . have at all of the times herein mentioned interfered with the work, and does now interfere with the work, of the said Hazel Scott, and that she is unable to move about without great pain and suffering." The answer admits the application of the alleged radium treatment; admits, by failure to deny, the alleged injuries; but denies that such injuries were the result of any negligence on the part of the defendant. For example, in the second paragraph of the answer appears the following: "Defendant . . . denies that by reason of any negligence of the defendant, plaintiff Hazel Scott is permanently disfigured and injured, or disfigured, or injured at all." This is not a denial of the alleged permanent injury and disfigurement, or that the same were caused by the alleged treatment, but only a denial that they resulted from any negligence of defendant. At the close of plaintiff's case, on motion of defendant, the court entered a judgment of nonsuit.

The case was tried in April, 1922. Dr. Mott, who is a particular friend of defendant and occupied offices with him, testified as follows concerning the condition of Mrs. Scott's injuries at the time of the trial: ''The burns over the Achilles tendon, it is a raw sore, it is an ulcer, sore that weeps. I mean, there is a serum or exudate that comes from it more or less continuously and tender to the touch. . . . The burn has been painful and has been sloughing. . . . I think time will effect a recovery. . . . One leg is shorter than the other. Q. To what do you attribute that shortness? A. To the destruction of the Achilles tendon. Q. . . . Is there any possibility of it ever being remedied? A. Some time it may. . . . Q. Did he (defendant) say anything about the nurse having followed directions? A. I believe he told me that she left the radium on too long. . . . I couldn't swear whether he told me that himself or not. I said I thought he had.'' The defendant testified that on one occasion he prescribed an application of radium for three hours and that his technician, referred to by other witnesses as his nurse, applied it for four hours and twenty minutes and that if radium is applied ''considerably too long . . . the healing is all the more difficult.'' Mrs. Scott testified that the excessive application was made to the tendon of the left leg, the one on which it is claimed the permament injury was inflicted; that she suffered intense pain from the injury continuously for nearly a year, and that she still suffered therefrom at the time of the trial. Relative to the effect of the treament, she testified that the defendant said ''that he considered it was his fault, not exactly his fault, but the fault of his nurse, and him not applying it. . . . He said that he should have been more careful with letting his nurse handle it, and he should have applied it himself.'' Plaintiff Charles Scott testified that defendant ''said he was very sorry she had been burned and he realized it was his fault and while he didn't have anything to do with applying the radium any more than directing his nurse, that he was responsible for everything she did in that office.'' Ernest Klette, one of plaintiffs' attorneys, testified that defendant said that ''it was his fault that she was in the condition she was, that he had written to the insurance company to that effect.'' The defendant testified: ''Radium has a peculiar effect on tissues of the body and

especially so in diseased tissues. In the application of radium to a diseased area it causes a destruction of the cells. . . . Now that is nothing more or less than you might call it, a form of burn, though it is quite different than a burn where you apply hot iron. . . . In applying a hot iron to the tissue you immediately destroy the tissue but in the application of radium you so disturb the cell that it dies after a certain period of time . . . varying from a few days to a week or three or four weeks. . . . It requires sometimes six weeks and maybe two months for these things to heal.'' In this case radium was applied to the abnormal growths on both hands, both knees and the tendons of both legs. Healing seems to have followed in the usual time and manner except in the case of the left leg, where the applica-tion was made for a longer time than was prescribed, and at that place there continued to be ''a raw sore, . . . an ulcer, sore that weeps,'' at the time of the trial, nearly two years after the treatment.

Evidence in conflict with the foregoing is purposely omitted because it cannot be considered in determining whether the defendant was entitled to a judgment of non-suit. [1] A court ''may grant a nonsuit only when, dis-regarding conflicting evidence and giving the plaintiff's evi-dence all the value to which it is legally entitled, herein indulging in every legitimate inference which may be drawn from the evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of plaintiff.'' (*Estate of Caspar*, 172 Cal. 147, 150 [155 Pac. 631].)

[2] Respondent contends that the judgment of nonsuit was properly entered on the ground of insufficiency of the complaint in various particulars. There are two answers to this contention. First, the grounds now urged were not stated in the motion for a nonsuit and, second, insufficiency of the complaint is not a statutory ground for granting a nonsuit. (Code Civ. Proc., sec. 581, subd. 5; *Keefe* v. *Keefe*, 19 Cal. App. 310 [125 Pac. 929]; *Pacific Paving Co*. v. *Vizelich*, 141 Cal. 4 [74 Pac. 352].)

Respondent urges that a physician and surgeon is not a warrantor of cures; that the result of the treatment alone is not sufficient proof of negligence or want of skill; that ''whether or not a defendant physician and surgeon has

been negligent or careless can only be tested, ascertained and determined from testimony given by physicians and surgeons practicing the same methods as the defendant''; and that in this case "there is no such indispensable expert evidence that the treatment of plaintiff Hazel Scott by defendant was in any way responsible for the injuries of which plaintiffs complain." For the purposes of this case, at least, all the foregoing propositions except the last may be conceded. The defendant himself is an expert in the methods of treatment employed by him. **[3]** The testimony as to defendant's admissions that he "left the radium on too long" and that "it was his fault that she was in the condition she was," when considered in connection with proof of the long continued intense pain suffered and the failure of the burned part to heal, constitute sufficient expert evidence to require the submission of the case to the jury. If the defendant had admitted that the injury complained of was caused by his negligence, it would hardly be contended that the evidence was insufficient to go to the jury. In the sense in which the word "fault" was used in the foregoing admissions, it is synonymous with "negligence." (*Indiana Union Traction Co.* v. *Long,* 176 Ind. 532 [96 N. E. 604]; *Garland* v. *Hewes,* 101 Me. 549 [64 Atl. 914]; *Sorensen* v. *J. I. Case Threshing Mach. Co.,* 129 Wis. 366 [109 N. W. 84].) It was in that sense that the word "fault" was used in *Rudd* v. *Byrnes,* 156 Cal. 636, 642 [20 Ann. Cas. 124, 26 L. R. A. (N. S.) 134, 105 Pac. 957, 960], where it is said: "The court should have allowed evidence of plaintiff's statements to the effect that the injury resulted from his own fault. They were declarations of a party, against his interest."

Respondent contends that the admissions of defendant "are not sufficient to supply the necessity for expert medical testimony," citing *Loudon* v. *Scott,* 58 Mont. 645 [12 A. L. R. 1487, 194 Pac. 488]. In that case it is said: "There was not any expert testimony to the effect that, upon the admitted facts, the action of Dr. Scott in causing the anaesthetic to be administered . . . indicated the exercise or want of ordinary care, skill, or diligence, as is required in malpractice cases. . . . But it is the contention of appellants that they met the requirements of the rule fully by introducing the admissions made by Dr. Scott, to the effect that

he knew that Loudon's intemperance had reduced his vitality and greatly increased the danger incident to the administration of an anaesthetic, and that he knew it was dangerous to cause the anaesthetic to be administered to Loudon on July 18, but because of his knowledge of the patient's physical condition he felt justified in proceeding at that time. That this does not amount to an opinion or admission that the treatment—the administration of the anaesthetic under the circumstances—was not in conformity to the requirements of good surgery, or indicated a want of ordinary care, skill, ability or diligence, is so obvious as to require no comment. No presumption of negligence arises from the fact that it was dangerous to administer the anaesthetic to Loudon on July 18, for the evidence discloses that the element of danger is present in every instance where a patient is anaesthetized.'' The distinction between the case cited and the one here under consideration is patent. In the Montana case the defendant had acted in accordance with his best judgment, and the evidence failed to show that he did not act reasonably. He made no admission of fault or negligence. Here the defendant admitted, according to the testimony, that the injuries complained of were caused by his fault.

[4] Some of the foregoing admissions were made by the defendant during an attempt to compromise. Section 895 of the Code of Civil Procedure provides that an offer of compromise and failure to accept it cannot be given in evidence. This does not mean that an admission made during an attempt to compromise is not admissible in evidence against the party making it, but only that the offer itself is not admissible. The basis of the rule prescribed by section 895 is expressed in section 2078, which reads: ''An offer of compromise is not an admission that anything is due.'' Admissions made in negotiations for a compromise, ''except as they are admissions of distinct facts, . . . are regarded as hypothetical admissions, from which it is not proper to draw any inference of liability, and therefore are not to be received in evidence.'' (*Smith* v. *Whittier*, 95 Cal. 279, 297 [30 Pac. 529, 534].) In Wigmore on Evidence, section 1061, it is said: ''If a plain concession is in fact made, it is receivable, even though it forms part of an offer to compromise.'' The admissions here in question were of distinct

facts, stated positively and not hypothetically, and therefore admissible in evidence, even though made in the course of an attempted compromise.

[5] Respondent argues that declarations and admissions are the weakest kind of evidence. The argument goes only to the credibility of the witnesses testifying to the admissions and the weight of the evidence, questions which do not arise on a motion for a nonsuit. The question here is whether the evidence, assuming its absolute verity, is legally sufficient to support a judgment for plaintiffs.

Appellant contends that the court erred in sustaining defendant's objections to certain questions propounded to defendant by counsel for plaintiffs. Some of these questions assumed, contrary to the fact, that the witness had testified that he had been negligent in the application of radium. Others were speculative as to what would have been the condition of Mrs. Scott if there had been no application of radium. The questions can be reframed so readily to eliminate the objectionable features that it is thought unnecessary to further consider the matter here.

The judgment is reversed.

Plummer, J., and Hart, J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 12, 1924.

All the Justices concurred.