[Civ. No. 4014.   Third Appellate District.—March 4, 1930.]

ANTONIO FAVALI et al., Appellants, v. J. A. RICHARD-SON et al., Respondents.

Philip M. Carey, J. O. Stemmler, Marvin B. Sherwin and Robert Collins for Appellants.

Berry & Watson for Respondents.

FINCH, P. J.—This is an action for damages. A judgment of nonsuit was entered in favor of the defendants and the plaintiffs have appealed. It is not contended that the judgment is erroneous except as to the defendants Richardson and Lewis, who will be referred to herein as defendants and respondents.

Respondents contend that the judgment was properly entered on the ground that the complaint does not state facts sufficient to constitute a cause of action. ■ Insufficiency of a complaint is not a ground for granting a nonsuit. (Code Civ. Proc., sec. 581; *Pacific Finance Corp.* v. *Roffalli*, 98 Cal. App. 198 [276 Pac. 1064]; *Loop Bldg. Co.* v. *De Coo*, 97 Cal. App. 354 [275 Pac. 881]; *Scott* v. *Sciaroni*, 66 Cal. App. 577 [226 Pac. 827].) The complaint charges that the defendants entered into a conspiracy to defraud the plaintiffs and made false representations which induced the plaintiffs to enter into the agreement involved in the action; that by the terms thereof the parties agreed to exchange properties owned by them respectively; that the plaintiffs conveyed their properties to the defendants in accordance with the agreement, but that the defendants "failed, refused and neglected to, and by reason of the falsity of said representations . . . could not transfer" their property to the plaintiffs "or anything of value whatsoever." The answers admit that Lewis and his wife entered into an agreement with the plaintiffs for the exchange of the properties described in the complaint; that the former received a part of plaintiffs' personal property and sold it; that while Lewis and his wife agreed to pay an encumbrance of $22,400 upon the plaintiffs' land there were additional encumbrances thereon in the form of liens for irrigation and county taxes in the sum of more than $1,000 at the time of the execution of the agreement, and that thereafter the plaintiffs permitted a judgment against them in favor of J. M. Culpepper for

the sum of $2,829.60 to become a lien on the land; that the plaintiffs "failed and refused to discharge or remove the aforesaid additional encumbrances" and admitted that "they were unable to comply with their said agreement"; and that thereafter the "defendants gave notice in writing to the plaintiffs that all interest of the plaintiffs in or to" the land which Lewis and his wife had agreed to convey to them "was terminated and ended." The truth of the foregoing allegations as to tax and judgment liens was admitted at the trial.

The agreement in question recites that the plaintiffs are the owners of 220 acres of land, referred to by the parties as the Culpepper ranch, "subject to an encumbrance . . . in the sum of $22,400," and a herd of dairy cattle and other personal property; and that Lewis and his wife are the owners of eighty acres of land, referred to as the Farmington vineyard, subject to a trust deed given as security for the payment of $10,000 and a second trust deed for $7,000, and that they own the personal property on the land. The agreement provides for the exchange of such properties, the grantees to assume and pay the indebtedness encumbering the respective lands to be conveyed to them, and Lewis and his wife to pay the sum of $1,040 to the plaintiffs "at the time of the execution and delivery of deeds and bills of sale." Under well-settled rules relating to the right of a defendant to a nonsuit, the evidence will be stated in the light most favorable to the plaintiffs.

June 28, 1924, J. W. Fitzgerald entered into an agreement to sell the Farmington vineyard to Fred Bruggisser. July 2, 1924, Bruggisser assigned all his "right, title and interest" under the agreement to Richardson. Fitzgerald thereupon executed a conveyance of the land to Richardson, who executed a trust deed conveying the land to Fitzgerald as security for the payment of $15,000 of the purchase price. Both instruments were placed in escrow to be delivered upon the payment by Richardson of $5,000 on the indebtedness secured by the trust deed. Richardson also gave Bruggisser a trust deed, subject to the one first mentioned, to secure payment of $7,000. Richardson was induced to purchase the property by Lewis, who was thereupon placed in charge thereof. October 2, 1924, Richardson agreed to convey all

his "right, title and interest" in the land to Lewis and his wife. October 14, 1924, Lewis and his wife entered into the aforesaid agreement with the plaintiffs. Both parties went into possession under the agreement, but no deeds of conveyance or bills of sale were ever executed. November 5, 1924, Lewis sold at public auction a part of the cattle which the plaintiff had agreed to convey and received therefor more than $5,000, out of which sum he paid them $1,040 in accordance with the agreement. January 23, 1925, counsel for the plaintiffs notified Lewis that "unless the agreement . . . is closed within the coming week, we have been instructed to commence suit to enforce the same." January 29, 1925, Richardson and Lewis indorsed upon the face of their agreement of October 2, 1924, a purported cancellation thereof and signed the same. Neither of their wives, however, signed the indorsement. On the next day thereafter Lewis and his wife assigned all their interests in various properties to Richardson and his wife as security for the payment of the assignor's promissory note for $10,260. The plaintiffs were unable to pay the amount of the aforesaid tax and judgment liens on the Culpepper ranch and, about February 3, 1925, Richardson told them they must discharge these liens within one week or he would not carry out the terms of their exchange agreement with Lewis and his wife. February 10, 1925, Richardson served notice of forfeiture on the plaintiffs and a demand for possession of the Farmington vineyard. The plaintiffs refused to surrender possession. The interest on Richardson's note to Bruggisser was payable semi-annually. Richardson testified that he failed to pay the first installment of interest amounting to $245 when it became due and that Bruggisser thereupon commenced proceedings to sell the Farmington vineyard under the terms of the trust deed securing payment of the note for $7,000. After these proceedings were commenced, Wilson Walker purchased the note from Bruggisser and, notwithstanding the fact that he had been associated with Richardson in business for several years, an association which continued until March, 1926, Walker carried out the proceedings commenced by Bruggisser and purchased the property at the sale thereunder on November 14, 1925. Thereafter Walker caused the plaintiffs to be ejected from the property. At the trial, in May, 1928, Lewis, who was

examined by the plaintiffs as an adverse witness, referring to the cancellation of his agreement to purchase Richardson's interest in the property, testified: "At a later date I acquired that interest in the property again, and I have had an interest in that property until the present day." It does not appear when or how such later interest was acquired by Lewis.

Lewis and Richardson had been "good friends" for at least ten years. They had been associated together in "a dozen or so" business transactions, Richardson frequently advancing Lewis' share of the money involved therein. Some of such business transactions were mere loans by Richardson to Lewis. It does not appear that any money passed between Richardson and Lewis in any of their transactions relating to the Farmington vineyard.

One of the plaintiffs testified that when Lewis first interviewed them relative to an exchange of properties he said, "I have a partner, rich fellow, in San Francisco"; that prior to the auction sale he said, "I was see my partner in San Francisco. I find out we cannot keep care of those cows, . . . so we figure to have auction sale." While, as against Richardson, the foregoing is hearsay evidence only of a partnership, it was admitted without objection and is therefore to be considered in determining whether it was error to grant the motion for a nonsuit, in the determination of which question contradictory evidence is to be disregarded. (*Lucy* v. *Davis*, 163 Cal. 611, 615 [126 Pac. 490] ; *Menefee* v. *Raisch Imp. Co.*, 78 Cal. App. 785, 789 [248 Pac. 1031] ; *Fong Lin* v. *Probert*, 50 Cal. App. 339, 344 [195 Pac. 437].) Richardson attended the auction sale of the plaintiffs' cattle on November 5, 1924. Lewis there introduced him to the plaintiffs, saying, according to the testimony of the plaintiffs, "I will introduce my partner, Mr. Richardson." Another witness testified: "Mr. Lewis say, . . . 'This is Mr. Richardson, my partner, that I tell you before.' . . . Q. Then they were partners, as you said, he was a partner in the auction sale? A. Was partner in auction sale and the land too." Another witness testified that before the sale commenced Richardson said, "We going to have a nice sale." A page of Lewis' account-book was admitted in evidence, reading as follows:

"Farmington Vineyard

W. R. Lewis and J. A. Richardson

|  | To Whom | Paid | For | Rec'd. |
|---|---|---|---|---|
| July 2/24 | J. W. Fitzgerald | 20,000.— | | |
| | Sacco Realty Co. | 1,000.— | | |
| | Standard Oil Co. | 122.95 | Fuel | |
| | J. W. Fitzgerald | 1,255.80 | Shook assigned to Natoli | |
| | " " | 36.— | Nails " | |
| | " " | 170.25 | Tractor hire & sulphur | |
| | J. B. Gondolfo | 159.50 | Labor | |
| | Nat Gonia | | Labor | |
| | Fred Bruggisser | | Labor | |
| | D. Natoli on acct. | | | 500.00 Grapes |
| | " " " " | | | 36.00 Nails |
| | " " " " | | Assigned shook contract | 1255.80 Shook |
| | W. R. Lewis | 5.80 | Labor, Pliers & Bread | |
| | Nat Gonia | 6.65 | Box making | |
| | D. Natoli | | | 6.65 Box Making |
| | Fred Beck | 25.— | Trip on Loan | |
| | Fred Bruggisser | 7000.— | 2nd Trust Deed on vineyard | |
| | Fred Bruggisser | | 7000) assignment to J. A. Richardson of Ferreira | |
| | | | 1700) & Simon notes refer to notes 20% discount." | |

■ Treating the foregoing evidence as uncontradicted, as is required on a motion for a nonsuit, it cannot be held insufficient to support an inference that Lewis and Richardson were partners in the ownership of the Farmington vineyard and in the agreement to exchange it for the property of the plaintiffs.

One of the plaintiffs testified that prior to the execution of such agreement he said to Lewis, "We got some . . . taxes to pay, state taxes, irrigation taxes, . . . I said, 'Mr. Lewis, we got that to pay, and we ain't got no money, only

got stock, we had the stock clear,' and he said, 'It is all right, I take care of that, you people got to pay it extra.' . . . He no say much time, was give plenty of time to pay, any time get the money repay it back.'' Lewis' promise to take care of these taxes was not embodied in the written agreement subsequently executed and evidence thereof was not admissible for the purpose of varying the terms of the writing, but the fact that Lewis had knowledge of the tax liens is entitled to consideration in connection with his subsequent conduct.

The same witness testified that shortly after the execution of the exchange agreement the plaintiffs were served with a summons in an action commenced against them by Culpepper and in which the aforesaid judgment against them was entered; that thereafter on the same day Lewis went to the Culpepper ranch and stated that he and his partner had decided to sell the cattle thereon; that the witness said, ''Mr. Lewis, this morning we got a paper served on us here. . . . 'We got note for $2,500. . . . I got to go down town and see Culpepper.' Mr. Lewis said, 'You no need lose time, you keep still here, keep working on here and keep care of the cow, because going to have auction sale on November 5th. I going to take this Culpepper judgment that time, and I going to buy from Culpepper, and I going to give an extension of this $2,500, give you plenty of time to pay when you get down there on the vineyard, then you can pay every year, pay the interest, then pay the balance a little bit at a time, whatever you can.' '' The summons was then delivered to Lewis and the plaintiffs gave no further attention to the action, but relied on Lewis' promise to take care of the matter. He allowed the suit to go to judgment and then took an assignment of the judgment.

The agreement contains the following: ''This agreement is to be consummated and concluded by the execution and delivery of deeds and bills of sale and the payment of money as herein provided, all within ten days from date hereof. . . . Time is of the essence hereof and of each and every part hereof.'' The agreement is dated October 14, 1924. Neither of the parties had tendered performance prior to the auction sale, which was held more than ten days after the execution of the agreement. At the time

of such sale, therefore, the plaintiffs were under no legal obligation to make the agreed exchange of properties. Their livestock and other personal property were then unencumbered. They could have borrowed money thereon with which to pay the liens upon the Culpepper ranch and the amount of their promissory note for which Culpepper was given judgment, but after Lewis' sale of such personal property they had no means of raising the money required for that purpose. With full knowledge of the tax liens on the Culpepper ranch, which he had promised to take care of, and with full knowledge of the Culpepper note and the suit thereon, which note he had agreed to pay, Lewis proceeded to sell the plaintiffs' personal property as his own, thereby rendering the plaintiffs financially unable to satisfy the liens on the Culpepper ranch. Under such circumstances Lewis is estopped to set up such liens as an excuse for not consummating the agreed exchange of properties. His partner, Richardson, of course, is equally estopped. ▪ If it be contended that the plaintiffs did not plead an estoppel, the answer is that the existence of the liens in question were set up as an affirmative defense by the defendants, and "all affirmative matters by way of replication are deemed to have been pleaded, and plaintiff may make proof of any appropriate fact tending to disprove or avoid the new matter set up as a defense as fully as if it had been specially pleaded." (21 Cal. Jur. 165.)

It appears that the plaintiffs are inexperienced in business transactions and that the defendants are shrewd business men. The evidence shows that the plaintiffs expended on the Farmington vineyard the sum of $2,000 in money and performed labor thereon of the reasonable value of $4,000, while Richardson received the whole of the returns from the crops produced thereon by the plaintiffs, amounting to $5,500. If the judgment is permitted to stand, the result will be that, in addition to their financial embarrassment, the plaintiffs have suffered a direct loss of more than $10,000.

Nothing said herein is intended as an expression of opinion as to the weight of the evidence or the proper judgment finally to be entered. Those are matters which have no place in the consideration of a motion for a nonsuit.

The judgment of nonsuit in favor of the defendants J. A. Richardson and William R. Lewis is reversed and the judgment in favor of the other defendants is affirmed.

Plummer, J., and Thompson (R. L.), J., concurred.