Daniel ASHBROOK and Thomas P. McMahon, Appellants,

v.

Kenneth E. O'HARRA and Arley R. Taylor, Appellees.

No. 2702.

Supreme Court of Alaska.

July 14, 1978.

Lyle R. Carlson, Fairbanks, for appellants.

Peter J. Aschenbrenner, Aschenbrenner and Savell, Fairbanks, for appellees.

OPINION

Before BOOCHEVER, Chief Justice, and RABINOWITZ, CONNOR, BURKE and MATTHEWS, Justices.

MATTHEWS, Justice.

This is a dispute concerning rights to unpatented mining claims. State law[1] requires that labor be performed annually on or for the benefit of each mining claim on state land at the rate of $200 per claim.[2] Each mining year for the purposes of the annual labor requirement begins at noon on September 1st.[3] If more than $200 per claim is done in any one year the excess work, not exceeding $800, may be applied against the labor requirement of future years.[4] Before December 2 of each year an affidavit showing the performance of labor for the past mining year must be filed with the recorder of the district in which the claim is located and in the office of the State Division of Lands.[5] The questions presented in this case concern affidavits of this kind.

Appellees, Kenneth E. O'Harra and Arley R. Taylor, leased 78 antimony claims to the Cantu Mining Association, a partnership consisting of four partners one of whom was appellant, Daniel Ashbrook. The lease, made in 1969, required Cantu to perform labor during each year of the lease sufficient to maintain the claims in good standing and to file affidavits reflecting performance of the labor in a timely manner. The lease also provided that Cantu could surrender any or all of the premises at any

1. The parties agree that state law governs this decision.

2. AS 38.05.210.

3. 11 AAC 86.220.

4. The relevant portion of AS 38.05.210 provides:

Labor shall be performed at the annual rate of $200 per claim. If more work is performed than is required by this section to be performed in any one year, the excess work up to a value of $800 may be applied against labor required to be done during the subsequent year or years.

5. AS 38.05.210; AAC 86.130.

time and thus terminate the agreement. Cantu could also assign the lease at any time and thereafter it would "have no rights or liabilities" under the lease. Cantu and a sublessee operated the claims through the mining year ending September 1, 1973. In December of 1973 Cantu, having run out of funds necessary to continue mining, assigned the lease to the National Bank of Commerce of Seattle.

The amount of annual labor required to maintain 78 claims is $15,600. In the summer of 1974 O'Harra became active on the property. He expended $7,800 in labor on the claims prior to September 1, 1974 and filed an affidavit to that effect. On the first day of the mining year beginning September 1, 1974, Ashbrook and his new mining partner, appellant Thomas P. McMahon, top-filed on seven of the claims formerly leased to Cantu by appellees. They then entered and worked the claims.

The present action was brought by O'Harra and Taylor to oust Ashbrook and McMahon and to obtain compensatory and punitive damages for trespass. Ashbrook and McMahon counterclaimed, asserting ownership of the disputed claims. Trial was to a jury which held in favor of O'Harra and Taylor, awarding them actual damages of $11,781 and punitive damages of $10,000.

For the mining year beginning September 1, 1970, Cantu filed an affidavit of annual labor in the amount of $30,000, for the year beginning September 1, 1971, Cantu's affidavit was $24,000, and for the year beginning September 1, 1972, Cantu's affidavit was for $25,000. None of the affidavits filed by Cantu stated that excess labor would carry over to future years. The trial court determined that such a statement was not necessary and ruled that O'Harra and Taylor were entitled to the benefit of the excess labor done by Cantu during those three years and could apply it against the annual labor requirement for the mining year beginning September 1, 1973. Appellants contest this ruling.

We hold that the superior court was correct. Neither the statute [6] nor the regulations [7] concerning the contents of an affidavit of annual labor require an express statement that excess labor will be carried over. Such a statement would serve no function since one can readily determine from the affidavit whether the value of the labor set forth is greater than the minimum required to maintain each claim for the year in question. There is no utility in not carrying over excess work, so there is no basis for concluding that the affiant has elected not to carry over any excess.

6. The relevant portion of AS 38.05.210 provides:

Labor shall be performed at the annual rate of $200 per claim. If more work is performed than is required by this section to be performed in any one year, the excess work up to a value of $800 may be applied against labor required to be done during the subsequent year or years. . . . During the year in which the performance of annual labor is required or within 90 days after the close of that year, the owner of the mining claim or some other person having knowledge of the facts shall file for record with the recorder of the district in which the claim is located a signed statement setting out the information, as may be required by the commissioner, concerning the annual labor of the preceding year and any labor in excess of that required for the preceding year. The statement, properly filed, is prima facie evidence of the performance of the labor.

7. 11 AAC 86.220 provides in relevant part:
(c) Before December 2nd of each year, the owner of each mining claim or some other person having knowledge of the facts shall make and file for record, in conformance with sec. 130 of this chapter, an affidavit showing the performance of the labor or the making of improvement for the immediately preceding assessment year and any labor in excess of that required for the preceding year which is to be applied to the subsequent year or years. The affidavit must contain
(1) the name or number of the mining claim, where situated, and the name and current mailing address of each owner;
(2) the number of days' work done and the character and value of the improvements made;
(3) the date of performance of the labor and of the making of improvements, and the name and mailing address of the person who did the work;
(4) The actual amount paid for the work and improvements, and by whom paid, if the work was not done by the owner or his lessee.

Ashbrook and McMahon attempted to challenge the accuracy of the Cantu affidavits. The court precluded them from doing so because Ashbrook was a partner in Cantu. We believe that an estoppel was properly invoked. O'Harra and Taylor were entitled to rely on Cantu's affidavits in determining the amount of labor they needed to do to maintain the claims. They would suffer prejudice, loss of their mining claims, if the affidavits were seriously in error. "The general elements required for the application of the doctrine of equitable estoppel are the assertion of a position by conduct or word, reasonable reliance thereon by another party, and resulting prejudice."[8] Those elements were present here.

If McMahon, who was not a partner in Cantu, had acted independently of Ashbrook in filing on the claims, there would be no basis for application of the rule of estoppel against him. That, however, was not the case as he was Ashbrook's partner and asserted no separate interest.

He too was therefore properly held estopped.[9]

AFFIRMED.

---

8. *Jamison v. Consolidated Utilities,* 576 P.2d 97, 102 (Alaska 1978).

9. *Oliver v. Burg,* 58 P.2d 245, 255 (Or.1936); *Favali v. Richardson,* 104 Cal.App. 301, 285 P. 1062, 1066 (1930).